3-18-0010 People of the State of Illinois, Appalachians v. Sterling Nicholson, Appellant. Okay, I don't have the sheet with the names on it. I apologize, I don't have the names of the attorneys with me. My screen shows Mr. Gnidovic for Appellee. I see. Okay. Thank you. Thanks for not making me pronounce the Appellant's last name. I would have messed it up. Well, I hope I don't. Good morning. Welcome to the Zoom court call. Ms. Punjabi? Yes. Is that correct? That's correct. You may begin. Thank you, Your Honor. May it please the court, my name is Deepa Punjabi and I represent the petitioner appellant in this case, Sterling Nicholson. Mr. Nicholson appeals the third stage denial of his post-conviction petition, raising a claim pursuant to Lafler v. Cooper. Mr. Nicholson claimed that he received ineffective assistance of counsel because his counsel failed to advise him during plea negotiations that the state's offer of six years for one count of aggravated domestic battery was the minimum sentence available for that charge and that a mandatory class act sentencing range of six to 30 years on that charge applied. Instead, counsel advised him that he would be subject to a class two extended range of anywhere from probation to 14 years. And Mr. Nicholson claimed that he would have accepted the six-year offer for aggravated domestic battery had he been correctly advised. Instead, he took a chance on going to trial, thinking he might receive a sentence as low as probation if convicted at trial, and he instead received 25 years for aggravated domestic battery. Now, the state concedes Mr. Nicholson's counsel rendered deficient performance pursuant to Strickland v. Washington. To establish Strickland prejudice in the plea negotiation context, a defendant must show that absent counsel's deficient advice, there was a reasonable probability that he or she would have accepted the state's plea offer, and the Illinois Supreme Court has advised us that a petitioner's bare assertion that he would have done so is not enough, but we do have much more than that here. Our Supreme Court, in its Hale decision, people v. Hale, offered some detailed guidance on the kinds of factors that provide proof that rejection of a plea offer was based on counsel's erroneous advice. These factors include the weakness of the defense case, which we have here, a disparity between the offer and the actual sentence, which we have here, the fact that an offer is for the mandatory minimum, which we have here. Corroborating statements by counsel, and here also we have corroborating statements by Mr. Nicholson himself at the sentencing hearing. So, these factors are all present in this record and corroborate the assertion of a reasonable probability that Mr. Nicholson would have accepted the six-year offer had he been correctly advised. Is it problematic that he starts out by saying that, had he been given the right information, he would more earnestly consider the offer, and then sort of switches to say, oh no, I didn't mean that, I absolutely would have taken it? I think it's sort of self-serving. I think that certainly it's not the most precise language. It's the first time that he is faced with this surprising information at sentencing. He is a lay defendant. I don't think we can expect that the language he uses to communicate himself is going to be as exact or precise as that of a legal professional, for example. And I think it's possible he was using softer or less direct language, perhaps to sound more formal when he was addressing the court. But I do think undoubtedly the main idea that he was trying to convey at sentencing was that, had he known of the correct sentencing range that applied during plea negotiations, that would have changed his thinking. That would have affected his thinking on the six-year plea offer. So I think that does corroborate his subsequent post-conviction assertion that, had he been correctly advised, there was a reasonable probability that he would have accepted the original offer. Now, the Hale court discussed the effect of the mandatory minimum in a case such as this. In Hale, the court noted that even though there was a disparity between the 15-year offer and the 30-year sentence that was actually imposed, the mandatory minimum in that case was 12 years. And the Hale court thought that the Hale defendant might have taken a chance on going to trial, thinking he could receive the 12-year minimum. And the courts said, had the offer been for the mandatory minimum, that would have corroborated the Hale defendant's claim that he would have accepted the plea, but for counsel's erroneous advice. Now, here, Mr. Nicholson's plea was for the mandatory minimum, but he was unaware of that. He took a chance on going to trial, that if convicted of aggravated domestic battery, that he could get a sentence as low as probation or perhaps a prison sentence that was considerably less than six years. He did not know that he was not going to be able to do any better than the six years that was offered if he was convicted at trial. So I think he credibly claims that that fact would have changed his analysis. So pursuant to Hale, the fact that six years was the mandatory minimum is a fact in the record that corroborates his assertion that had he been advised of the correct sentence range, there's a reasonable probability that he would have accepted the state's offer. Now, according to the state and according to the circuit court below, because Mr. Nicholson knew he was subject to Class X sentencing on attempt murder, and he still proceeded to trial, we should not then believe his assertion that he would have declined to go to trial had he known Class X sentencing applied to his aggravated domestic battery charge. But Mr. Nicholson testified that his counsel had expressed great confidence to him that he could likely prevail on the attempt murder charge. Counsel testified, I wouldn't have given him a 100% guarantee, but he did tell him that he would likely prevail on the attempt murder charge, and he had not expressed the same confidence about the charge of aggravated domestic battery. So Mr. Nicholson reasonably wasn't worried about the sentence range for attempt murder and analyzing the plea offer. And I think the more important point is that the advice about the Class X attempt murder would not have neutralized the misinformation that Mr. Nicholson received about the possibility of getting probation or a sentence of fewer than six years if convicted of aggravated domestic battery at trial. So the circuit court's reliance on that fact that Mr. Nicholson was advised of the attempt murder, that attempt murder was Class X, was not a reasonable basis to reject his claim. And this, again, this goes back to the Hale court's analysis of whether a defendant understands what is the minimum sentence in relation to the plea offer. That can be a critical fact in assessing whether the record supports that there's a reasonable probability that defendant would have accepted the plea. So, you know, the bottom line is we know from the Supreme Court's Hale decision that a bare assertion by a petitioner that he would have accepted a plea is not enough to establish strickland prejudice, but the Hale court tells us what kind of facts will corroborate that assertion. The weakness of the defense case, which we have, the disparity between the offer and the sentence, the fact that the offers for the mandatory minimum, corroborating statements by counsel, and of course here we have corroborating statements by Mr. Nicholson himself. So, in light of the ample corroborating factors in this record, the circuit court's refusal to credit Mr. Nicholson's assertion that there was a reasonable probability he would have accepted the plea was manifestly erroneous. If it's all right with this court, I wanted to turn to the appropriate remedy for this claim. Should this court decide that Mr. Nicholson established a strickland claim? Are there other questions prior to that? Okay, go ahead. Oh, thank you. So, in Lafleur, the U.S. Supreme Court explained that there are different possible remedies in this context where a defendant was offered a lesser sentence on a charge, rejects the plea offer, and then is convicted of the same charge at trial and is given a lengthier sentence. In that situation, resentencing is the appropriate remedy. Now, Lafleur explains that there are other situations where a different remedy is appropriate. If, for example, a defendant rejects a plea on one offense and then is convicted at trial on a different or greater offense that triggers mandatory minimum sentences that are lengthier than the original plea offer, there, resentencing wouldn't be a sufficient remedy and the remedy would be to vacate the conviction and order the state to reoffer the plea. Here, that is not the situation. Mr. Nicholson's offer was six years for aggravated domestic battery, and he was convicted at trial and sentenced on the same charge to 25 years. So, the state, I think, agrees, and it's brief, too. Both parties seem to agree that resentencing is the appropriate remedy here. This court, however, recognized in its Hudson decision that a court that is crafting a remedy upon remand in this context does not have unfettered discretion. Lafleur cautioned that the remedy should neutralize the taint of the constitutional violation. And this court in Hudson also recognized that Lafleur advised that as a baseline objective, the remedy should strive to, where possible, should strive to restore the defendant in prosecution to the positions they were in prior to the rejection of the plea offer. Here, I would submit that the sentence that would best neutralize the taint and return the parties to their prior positions is a sentence of six years, which was the original offer. This court, under its authority under Rule 615, can reduce Mr. Nicholson's sentence to six years. Alternatively, this court can vacate Mr. Nicholson's sentence and remand the cause to the trial court to hold a sentencing hearing where the trial court can exercise discretion in determining the appropriate sentence. But the cause should be remanded, again, with the caveat that the trial court's discretion is limited by the requirement that the remedy neutralize the taint of the constitutional violation. So for these reasons, we would ask that this court reverse the denial of the petition and either reduce the sentence or remand for a new sentencing hearing before a different circuit judge. You know, prior to the rejection of the plea offer, the judge knew very little about the facts of this case. And during the trial, many facts about the severity of the victim's injuries and other such things came out, which on remand will be very difficult for the judge to unhear. And I think the judge even stated at some point during the evidentiary hearing, you know, if it were up to me, I would have found you guilty of attempt murder. So the judge had formed a strong opinion about the defendant's guilt and the appropriate sentence based on everything that came out at trial. And if, as Laffler suggested, the objective of the remedy, where possible, is to return the parties to the positions they were in prior to the rejection of the plea, reassignment to a new judge who did not preside over the trial would certainly facilitate in achieving that objective. I do have a question for you, counsel. Yes. If we remand for a new hearing, there's a likelihood that the sentence may be a little less, but more than 14 years. Does this court have the authority to sort of manipulate or decide what is fairest because defendant knew, and he states in his post-conviction petition, that he thought he had a maximum of 14. What is your position on should it be six or 14, and if not 14, why? Again, my position would be that neutralizing the taint of the constitutional violation here would necessitate placing him back to where he was before he rejected the plea offer. And a six-year offer being on the table would do that. A six-year sentence would best do that. Certainly, though, anything above 14 years, I think, cannot be said to neutralize that taint. Again, I think the court's instruction upon remand to the circuit court that this sentence has to neutralize the taint, perhaps the court that can, upon remand, offer more detailed guidance or not, that's up to this court. The circuit court issued a sentence of between three and 14 years. I think this court can do that and then leave that discretion to the trial court. But I think that the important thing here is that the trial court understands that the discretion is limited such that the sentence must neutralize the taint of the constitutional violation. Thank you for answering my question. Yes. Were there any other questions that I can answer for this court? I don't have anything else. Neither. Thank you. Okay. Well, so then, for the reasons argued here and in the written briefs, appellant respectfully requests that this court reverse the denial of appellant's post-conviction petition and either reduce his sentence or remand the cause for resentencing. Thank you. Mr. Genetovic? Thank you, Your Honors. Good afternoon. I'm Gary Genetovic from the U.S. Attorney's Appellate Prosecutor's Office on behalf of the people of the city of Illinois. Initially, first of all, I want to take an apology for my background. I thought that that was already set from yesterday, and I just noticed that as we were trying, and I was trying to figure out how to take and do it, and being unfamiliar with Zoom and unfamiliar with everything, I apologize for that. It's not a problem. Not distracting, and we had the same thing yesterday, so we're used to it. Thank you. In this appeal from the denial of a third stage evidentiary hearing, what's difficult about this particular case is the fact that it has to be obviously fronted about the fact that the defendant was subject to a mandatory 6-30. He wasn't advised of that. But at the same time, while all of this was going on, he nonetheless had attempt murder charges that carried the same actual mandatory 6-30 minimum that he faced. So we have to take and try to analyze what was going on at that time and whether or not a claim or whether or not this failure to advise him of the fact that he was going to be on this recidivism statute, he was going to be subject to a 6-30 on the aggravated domestic battery, whether or not that lack of counsel's failure to do that, whether that affected his decision to take and reject the plea. And it is the people's position, and it is based in part also on Hale, which has strikingly similar facts to the case of Barr. The fact that defendant was simply bent on going to trial, that even if he had known about the 6-30 recidivism statute applicable to his aggravated domestic battery, he still would have rejected it. And that is based on the fact that, first of all, when he was sentenced, his comment was, I would have considered it more earnestly, rather than saying, holy cow, if I had seen that or if I had known that, I would have taken the six years. The trial judge did focus on that. And I think that that is a reasonable thing to focus on. I think it's a practical application of what someone was thinking at the time. But in addition to that, if you take a look at counsel's testimony, as well as the fact of his motion for reconsideration of sentence in which this issue was raised, which kind of also factors into the procedural issue that the people have raised with respect to forfeiture, but even dealing with forfeiture, we still have to get down to this issue. And that is, counsel basically testified that he would not have advised him to take a plea. He never does. He never advises anybody to do anything. What he does is he gives them the parameters and he lets them make the decision. He did take and say that he would take and talk about the strength or the pitfalls or the strength of the state's case, the evidence that they had. But then again, he doesn't make any forecasts. He doesn't make any guarantees. He doesn't say you're going to be acquitted of this or you stand a good chance of this. A lot of this is just information to allow defendant to take and make a decision whether or not he wishes to plea. So the thing is, at the time, defendant was still nonetheless facing a mandatory 6 to 30 on the attempt murder. He had no guarantee that he was going to be acquitted. The fact that we now know he was shouldn't factor into a decision, shouldn't factor into assessing whether or not he would or wouldn't have accepted. It's the fact that at that moment, he was facing that. Yet he had an offer on the minimum term for that mandatory class X on the attempt murders. And he rejected it. I don't take and see where knowing that he stood another mandatory 6 to 30 on the aggravated domestic batteries would have changed his decision. The fact that we now know that he was acquitted, of course, defendant can take and say, holy, I would have taken it. I would have taken it because it's mandatory 6 as opposed to probation 14. But nonetheless, that aspect can't be looked at now. It can't look at what has happened afterwards to judge what he did or didn't or would or wouldn't have done before. And I think that is the primary pitfall of the defendant's argument because a lot of what they rely upon is, I think, what happened afterwards. And again, there is no question that the offer of 6 as opposed to the 25 is a great disparity. There's no argument that can be made about that. But as Hale points out, you can't exclude from consideration the fact that at the time, he had other charges that had the identical sentencing range. You cannot divorce that from this calculation. So that, I guess, in my way of thinking, that somewhat ameliorates that harshness. It takes away that particular factor from consideration because if this was just aggravated domestic battery, if that had been the only thing he had been charged with and he hadn't been told this and got a 25, I don't think we'd be here. Simply because the fact that great disparity alone would be sufficient and enough to take and establish that there was prejudice here. But considering the totality of the facts present at the time and considering that in relationship to the failure of information and effective assistance, the people believe that the trial judge's decision that there was no prejudice was correct and it's not an abuse of discretion. So if there are any questions about that, I'd be happy to respond. So your argument depends on our believing the attorney as opposed to believing Mr. Nicholson's testimony with regard to what he was told about whether or not he could prevail on the attempt murder charge. That is a credibility question that was made by the trial judge in favor of the defendant. Yes. Okay. And the defendant did say that what he had been told was that it was the intent element where the state's case was weak and that the state would likely not be able to prevail on intent. Correct. Correct. Correct. Is that something that the defendant is likely to have known absent being told that? No. I don't think he would have obviously known that. Okay. Are there any questions with respect to that? Because I'm going to take and then address the remedy. Are there any other questions with regard? Okay. With respect to the remedy, yes, I believe our brief agreed with the defendant that a resentencing hearing would be necessitated in the event that the court were to take and find that there was prejudice in this case. And I think whether people disagree with the defendant is simply with the fact that, you know, this court or there should be an order when the court were to remand and require the trial judge to enter a sentence of six years. I think if we're going to take and place the parties back, what the first kind of prejudice is, and it's kind of akin to the fact that when the defendant is offered a lesser sentence that's rejected but convicted of the same charge, the trial court can exercise discretion to determine if the defendant should receive the term that was offered by the government, sentence the defendant to reimpose the sentence that he received, or something in between. And so I think that remanding this case under these guidelines would be sufficient to take and ameliorate the violation of the Sixth Amendment. If this court were to remand and basically if the court were to take and say because of the probation of 14, if the court were to take and put the parties back in that position, if the court limited to some sort of sentencing between that and 14, I can see where that ameliorates the harshness. I think that remanding it or just ordering a six-year sentence I think gives the defendant a windfall, and the windfall is it's the fact that he, again, factoring in what he decided when he decided to take and reject the plea when he still had a six to 30-year term facing him, I think basically would take and give him Simply because of the fortuity of the fact that counsel didn't advise him of this, okay, I think that remanding with the sentencing range or something with the sentencing range for amelioration to give the trial judge some discretion to take and put the parties back in the position they would have been, I think is the most equitable thing to do in this particular situation. And I also disagree with counsel. I don't think that this has to go before a different trial judge, regardless of the fact of what Judge Mangieri said. I think that the case law is clear that simply because the trial judge makes a decision that is adverse and has knowledge about facts of things does not automatically disqualify that trial judge from carrying out their duties. I think that there is a presumption of fairness and impartiality that I think pertains, and I think that in this particular case, I don't think that such a drastic remand order is necessitated. I'm not positive, but I think that may be moot. I think that Judge Mangieri has retired. I don't, that's okay. That kind of answers that question, doesn't it? It does. So are you suggesting that we send it back with a sentencing cap of 14 years? Or a recommendation? Recommendation, I think, would be more of something that, you know, in this particular case, in this particular situation, simply because of the fact that because this case kind of falls somewhere between the two types of prejudice that were talked about in the cases. Because in his case, he rejected an offer, but he wasn't convicted of the same charge. In a way, he was, because the offer was made and he rejected it. But I think that in this particular case, because of the misinformation, I think that allowing the trial judge to reimpose the 25-year term, I don't think would, that alone or that in and of itself would not ameliorate the ineffective assistance of counsel. Because in order for the court to do that, the courts are not only going to have to find that it was deficient performance, but also that it was prejudice. So if you're going to find that, he's going to find that that basically wasn't effective. To ameliorate the Sixth Amendment violation, to allow the judge to reimpose the same 25-year sentence doesn't ameliorate the harshness of the ineffectiveness. So I think that the people are constrained to take them and suggest that somewhere between the 6th and 14th, I think would be a remedy to take and ameliorate exactly what all happened in this particular case. Mr. Ganinovic, you're not conceding though the first half of the equation, whether there was or was not, because I'm wondering if could means would be acquitted. And thinking about Judge Mantieri's statement that, well, he rejected the plea knowing there was a could be up to 30 years. Are you backing away from that position? I'm not sure. If you're asking me if I'm kind of conceding or backing away from my original argument that there was no prejudice, no. That's what I'm trying to say. Okay, no. No, I'm not. What I'm just arguing the alternative is facing the possibility of what the court might do, because I don't know what the court is obviously going to do. But facing the possibility of what the court might do, if the court were to disagree with Judge Mantieri, and if the court were to disagree and find prejudice, then what is the remedy? But I don't think we get that far because I think that what we have here is I don't think we have prejudice. I think Judge Mantieri's decision was correct. For a moment, I thought opposing counsel had convinced you that it should be remanded with the 6th to 14th, so I needed to clear that up in my mind. Thank you very much. If there are any other questions, I'd be happy to respond. Okay, it doesn't look like it. Thank you. Thank you. Ms. Punjabi, any rebuttal? Yes, a few points. So, counsel talked about how Mr. Nicholson's attorney at the evidentiary hearing, his testimony indicated that this was a client who wanted to go to trial. I don't think that's what he stated. He stated that he would not have advised or he would not have told Mr. Nicholson what to do one way or the other on the plea offer. But in fact, he never denied Mr. Nicholson's claims. In fact, there wasn't the kind of testimony that you saw in the Hale decision, I believe there at the evidentiary hearing, that there was testimony from counsel that this, I remember this client, this was a client that wanted to go to trial. Here, we didn't ever have that kind of testimony from counsel that, yes, defendant was bent on going to trial. If anything, counsel's statements, they corroborated many aspects of Mr. Nicholson's claim. You know, he testified that while he didn't advise on the Class X enhancement, he advised Mr. Nicholson that a Class II extended range applied. And this corroborates that Mr. Nicholson's allegation in his affidavit that his counsel advised him anywhere from probation to 14 years applied to aggravated domestic battering. Counsel also testified at the evidentiary hearing that while he couldn't recall if he had specifically told Mr. Nicholson he would likely prevail on attempt murder. As this court points out, it would be unusual for a lay defendant to know that the intent element would be the weak point of the attempt murder case. And counsel did corroborate this portion of Mr. Nicholson's testimony where he said, I can't remember specifically what I said about the charge, but it is my practice to advise on the differing strengths and weaknesses of the different charges. To some degree, that does corroborate Mr. Nicholson's testimony. His attorney told him he'd be likely to prevail on the attempt murder charge, but not the aggravated domestic battery charge. Counsel also, his statements at sentencing and the motion to reconsider corroborated Mr. Nicholson's claim of prejudice where he took the unusual step in his motion to reconsider to ask the court to vacate Mr. Nicholson's conviction due to his erroneous advice. And I think one can surmise that he resorted to this unorthodox measure of asking to vacate a conviction in a motion to reconsider sentence because he was aware of just how catastrophic his error had been for his client. And I think that counsel's request in the motion to reconsider, so that corroborates that claim of prejudice, that counsel would take this unusual step in a motion to reconsider shows that he knew he had really prejudiced his client. Counsel, let me ask you, in looking at the record, I think the offer was a little bit informal. And I'm wondering, I didn't see in the record where your client was given an offer on the aggravated domestic battery that the state said if you plead guilty, you know, we're recommending six on the attempted murder, but they did not say what the other recommendations would be. It's in the letter to, so Mr. Nicholson attached to his post conviction petition, his own affidavit, and also a letter from his counsel outlining what the offer was from the state. And there it says, you know, at first they state had offered attempt murder on 12 years, and then the state dropped offer to it's dropped 12 years and then was going to offer 10 years for aggravated domestic battery and then they went down even further, and the offer was six years for aggravated domestic battery. It's outlined in the letter from counsel to Mr. Nicholson. I'll look at the record. I appreciate your working knowledge of the record. Yes. It had a fairly extensive criminal history, and a minimum six would have been the minimum extended term as well on the aggravated domestic battery. So, knowing that the offer was the minimum prison extended term prison sentence. Why doesn't the trial judges logic prevail here you knew what you were risking you knew this was a good deal and you didn't take it. Well, because again, you know, from Mr. Nicholson's perspective, if he thought there was a good chance that he was going to prevail on attempt murder, which he in fact did prevail on that charge. I see my time is up if I could finish. Thank you. So, he he then he's thinking that a six year offer for aggravated domestic battery is not going to look attractive if he thinks that probation or and I believe the extended range is three to 14. Yeah, I'm present for class to so he thought he could do as well as three years, if convicted at trial and that may have induced him to chance going to trial, and he says but hey if I knew six, I was never going to do any better than six years. If convicted at trial that that would have changed my analysis. I think the trial, in light of all the ample corroborating factors here, the exact factors that hail points to will correct that will corroborate such an assertion. In light of all these factors that we have here. You've answered my question. I really appreciate your input. Okay, good. Thank you. Um, were there any other questions. No. Okay, well then, again, we respectfully respectfully would request that this court reverse Mr Nicholson's denial of his petition and reduce and or remand for resentencing in this case. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and will issue a written decision as quickly as possible. The court will now stand in recess for a panel change.